STATE, Respondent, v. BROWN, Appellant.

*No. State 141. Argued March 3, 1971.—Decided April 2, 1971.*
(Also reported in 185 N. W. 2d 323.)

568

For the appellant there was a brief and oral argument by *Robert J. Lerner* of Milwaukee.

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *E. Michael McCann,* district attorney of Milwaukee county.

HALLOWS, C. J.   There are two basic issues on this appeal: (1) Were the out-of-court identifications a product of an illegal confrontation or one so suggestive as to deny Brown due process of law; and (2) were the in-court identifications the product of or tainted by an unconstitutional confrontation?

The law is clear that an in-court identification must not be the result of an exploitation of illegality or tainted by a violation of due process of law. In the trilogy of lineup cases, *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178; and *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, the supreme court followed the test laid down in *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441, in determining the admissibility of in-court identifications following an illegal lineup or illegal confession. The *Wong* test is simply whether the evidence is acquired as the result of exploitation of illegality instead of by means sufficiently distinguishable and independent to be purged of any primary or prior taint of illegality. *See State v. Schneidewind* (1970), 47 Wis. 2d 110, 118, 176 N. W. 2d 303. Consequently, although there may be an illegal out-of-court identification, if the in-court identification can stand independently of such an out-of-court identification, it is admissible.

The initial question is whether the out-of-court identifications were made under illegal circumstances. Because a person is illegally arrested, it does not follow necessarily a confrontation and identification are thereby tainted with illegality. To become tainted, the identification must be caused by or be the result of the illegal arrest. Here, the arrest furnished only the occasion for the identification; it did not suggest or influence it.

In an analogous situation, we stated in *Phillips v. State* (1966), 29 Wis. 521, 139 N. W. 2d 41, that an unreasonable detention gave rise to an exclusionary rule in respect to an admission and statements on the theory the unreasonableness conclusively caused the accused to react as he did as a matter of law. Such rule was held not applicable to a lineup because an unreasonable detention does not cause the lineup. *See Massen v. State* (1969), 41 Wis. 2d 245, 252, 163 N. W. 2d 616; and *Quinn v. State,* ante, p. 101, 106, 183 N. W. 2d 64. The illegal arrest, while it affected Brown to the point of making a confession, did not cause the confrontation or cause him to do anything in respect to his identification. Hence an identification otherwise valid does not come under the exclusionary rule because the arrest was illegal.

Brown also argues his identification at the police station was the result of a confrontation which was so unnecessarily suggestive as to be illegal. We think this identification of Brown by Agnello, made while Brown was confessing to the district attorney, was the result of an inherently and obviously suggestive situation. Certainly, the situation was more suggestive that Brown was in fact the man Agnello wished to identify than what was found in *United States v. Wade, supra,* to be an improper suggestion when the accused stood alone in an open door in view of the witness prior to the lineup, and in *Gilbert v. California, supra,* wherein impropriety was found in the fact some 100 witnesses to several alleged robberies made wholesale identifications in each others presence. Agnello's out-of-court identification should have been suppressed prior to trial.

Mrs. Golimowski's first identification of Brown was as he left an elevator in the Safety Building. Prior to that she correctly observed that Brown was not in a lineup; she did not know that Brown had confessed. Her confrontation with Brown was not in any way suggestive or planned. She saw Brown merely as a man being transported by the police.

At the trial the state had Agnello and Mrs. Golimowski identify Brown without reference to their out-of-court identification. This tactic forced the defense to either forego impeachment or put before the trier of the fact the alleged illegal out-of-court identification. This unfair situation was pointed out in *United States v. Wade, supra,* at 240, "The State may then rest upon the witnesses' unequivocal courtroom identification, and not mention the pretrial identification as part of the State's case at trial. Counsel is then in the predicament in which Wade's counsel found himself—realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out and dwelling upon his prior identification." The defense brought out that both of them had identified Brown at the police station and attempted to develop that the in-court identifications were a product of and tainted by the out-of-court identifications.

We think the record shows Mrs. Golimowski's in-court identification was based on her personal knowledge and observation gained at the time and place of the offense and was untainted by her identification at the police station as claimed by Brown. She had sufficient opportunity to observe Brown on the night of the robbery; she was the only employee behind the check-out counter when the two armed men came into the store. Brown stayed near the door as the other came near the cash register and took money from the drawer. She scuffled with this man and Brown came over and grabbed her. There was sufficient opportunity for her to get a good look at her assailants. This is borne out by the fact she did not make an erroneous identification at the lineup and her immediate recognition of Brown as he came off the elevator. Her testimony passes the test of *Wong Sun v. United States, supra,* and of *United States v. Wade, supra,* which

was adopted by this court in *Jones v. State* (1970), 47 Wis. 2d 642, 651, 178 N. W. 2d 42.

As to Agnello's in-court identification, the record is not clear that it can stand independently of and untainted by his out-of-court identification. At the time of the robbery he was in the backroom and did not have sufficient time to make a substantial observation of Brown. Agnello ran out the back door and briefly saw a man running along the outside of the store; they exchanged shots. The government had the burden "to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States v. Wade, supra*, at 239. The state did not meet this burden of proof.

However, the error of admitting Agnello's testimony does not mean the case must be reversed and a new trial granted. In view of the strong testimony of Mrs. Golimowski, the testimony of Agnello can well be considered harmless error since it was corroborative of her identification testimony. In *Gilbert v. California, supra*, the harmless-error rule was recognized and applied to constitutional error. That rule was formulated basically in *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, and adopted in *Whitty v. State* (1967), 34 Wis. 2d 278, 289, 149 N. W. 2d 557. This test requires this court to be able to declare a belief that the error was harmless beyond a reasonable doubt. The sufficiency of the evidence is not questioned on this appeal, only the admissibility of the identification testimony. Mrs. Golimowski's identification alone was positive and sufficient for an identification of Brown beyond a reasonable doubt. We believe beyond a reasonable doubt the error in admitting Agnello's testimony on the same point was harmless.

This case was tried to the court without a jury and that may be the reason the in-court identification evidence was admitted subject to objection. As we read

*Wade* and *Gilbert* that procedure is not a proper one when a constitutional question is involved. *Gilbert v. California, supra,* at p. 272 states: "The admission of the in-court identifications without first determining that they were not tainted by illegal lineup but were of independent origin was constitutional error. *United States v. Wade,*" *supra.* In *Gilbert,* because the record was unclear, the case was sent back to afford the state the opportunity to establish that the in-court identifications had an independent source or that their introduction in evidence was in any event harmless error, but that is not necessary in this case. On the record we have been able to determine that Agnello's testimony did not have an independent source but its admission was harmless error and that Mrs. Golimowski's testimony had an independent source.

Whether the trial is to the court or to the jury, when a question is raised of an in-court identification being tainted by illegality and not of an independent origin, a *Goodchild* type of hearing should be held, preferably before trial if the problem then arises, as it did in this case, or during trial if the issue arises at that time. When the defendant has objected to or moved to suppress an in-court identification on the ground it is tainted by the illegality of an out-of-court identification and he has proved such illegality, the state has a duty of proving the in-court identification is of an independent origin and untainted. This is not satisfied by the state's ignoring the out-of-court identification in the presentation of its case and forcing the defense to bring forth before the finder of the fact the illegality tainting the out-of-court identification. The problem is no different than those we have with tainted confessions and *Miranda* warnings [2] in which we have adopted a hearing proceeding for determining the issue outside the presence of the jury. *See: State ex rel. Goodchild v. Burke, supra* (con-

[2] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

574

fessions) ; *Roney v. State* (1969), 44 Wis. 2d 522, 534, 171 N. W. 2d 400 (*Miranda* questions). One hearing can dispose of all such issues if raised and should be held prior to trial if made under sec. 971.31 (2), Stats.

A pretrial hearing to determine questions arising from alleged illegal lineups was noted and commented on in *Wright v. State* (1970), 46 Wis. 2d 75, 80, 175 N. W. 2d 646. *See also State v. Cole,* ante, p. 449, 184 N. W. 2d 75, Mr. Justice WILKIE'S concurring opinion. We now adopt the procedure.

*By the Court.*——Judgment affirmed.